IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WHOLE FOODS MARKET GROUP, INC., | § § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| CEA BEVERLY, LLC, HALEY & ALDRICH, INC., and CONSTRUCTION MANAGEMENT & BUILDERS, INC., and DOE DEFENDANTS NOS. 1 - 25 | § § § § § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Whole Foods Market Group, Inc. ("Whole Foods") files this Original Complaint against Defendants CEA Beverly, LLC ("CEA"), Haley & Aldrich, Inc. ("H & A"), and Construction Management & Builders, Inc. ("CM&B"), and Doe Defendants Nos. 1-25 (collectively, "Defendants").

### I.    PRELIMINARY STATEMENT

1.    This is a construction defect case arising from the negligent design, planning, and construction of a Whole Foods store located in Beverly, Massachusetts.  Whole Foods is the tenant. CEA is the landlord and owner.  H&A was the site developer and geotechnical engineering firm and CM&B was the general contractor.  The Doe Defendants are the subcontractors, tradespeople, and other construction and engineering personnel hired by CEA, H&A and CM&B (as their agents or subagents to CEA) – whose identities are currently unknown to Whole Foods (and are not ascertainable absent discovery from some or all named Defendants).  However, on information and belief, and based on the work performed and the current condition of the property, Whole Foods has information and belief that Defendants performed their work on the project in a negligent and defective manner.

2.      Pursuant to Whole Foods' Lease with CEA for tenancy of the store, CEA was solely responsible for constructing and designing all structural elements of the store, including the foundation, the roof, the building structure, the building columns, and the building pad, all of which were to be constructed in conformity with a comprehensive geotechnical engineering report.

3.      CEA entered various agreements for the construction of these building elements with H & A and CM&B, who, in turn, retained numerous subcontractors, tradespeople and other construction and engineering workers, all of whom, upon information and belief, agreed to perform their work in a good and workmanlike manner in accordance with agreed specifications and in compliance with all applicable standards of care.

4.      CEA failed to procure and comply with a comprehensive geotechnical engineering report that included design recommendations for all elements of the building that CEA was solely responsible for constructing, as required under its agreement with Whole Foods.

5.      H & A, CM&B, and the Doe Defendants' negligent preparation and construction of the pad site and store violated all applicable professional standards of care and competency.

6.      Because of CEA's breach of contract and the negligence of H & A and CM&B, the foundation is not suitable and Whole Foods' store is not structurally sound.  Defendants' acts and omissions have resulted in foundation settling that has caused significant property damage to Whole Foods.

7.      Because Whole Foods has incurred and will incur substantial losses in repairing Defendants' defective work and the resulting damage, the Defendants are liable for these losses, expenses, and damages, as well as the costs and fees incurred in bringing this action.

1616773318.1

## II. PARTIES

8.      Plaintiff Whole Foods Market Group, Inc. is a Delaware corporation with its principal place of business in Austin, Texas.

9.      Defendant CEA Beverly, LLC is a Massachusetts limited liability company doing business in Massachusetts.  CEA's principal place of business is 1105 Massachusetts Avenue, Suite 2F, Cambridge, Massachusetts 02138.  CEA may be served with process through its resident agent, Steven A. Cohen, at 1105 Massachusetts Avenue, Suite 2F, Cambridge, Massachusetts 02138.

10.     Defendant Haley & Aldrich, Inc. is a Massachusetts corporation doing business in Massachusetts.  Haley & Aldrich, Inc.'s principal place of business is 70 Blanchard Road, Suite 204, Burlington, Massachusetts 01803.  Haley & Aldrich, Inc. may be served with process through its registered agent, Samantha R. Swedick, at 70 Blanchard Road, Suite 204, Burlington, Massachusetts 01803.

11.     Defendant Construction Management & Builders, Inc. is a Massachusetts corporation doing business in Massachusetts.  Construction Management & Builders, Inc.'s principal place of business is 85 Sam Fonao Drive, Beverly, Massachusetts 01915.  Construction Management & Builders, Inc. may be served with process through its registered agent, C T Corporation System, at 155 Federal Street, Suite 700, Boston, Massachusetts 03220.

12.     The Doe Defendants are currently unknown to Whole Foods, but will be discovered based on Defendants' Initial Disclosures and early discovery in this case.  The Doe Defendants are the subcontractors of CEA, H&A and CM&B, and they performed all or part of the engineering, site planning, and construction at issue in this case.  At this time, Whole Foods does not have access to information that would lead to their identification. That information lies exclusively with the named Defendants. Once Whole Foods ascertains the identities of the Doe Defendants, Whole

3

Foods intends to amend the complaint (moving for leave of court to the extent necessary), and then to effectuate proper service."

### III. JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

14.     Venue is proper in the U.S. District Court for the District of Massachusetts (in the Eastern Division), pursuant to § 1391(b), because all or a substantial part of the events or omissions giving rise to Whole Foods's claim(s) occurred in this District (in Essex County).

15.     This Court has personal jurisdiction over Defendants.  Each Defendant has conducted and/or continues to conduct business within the Commonwealth of Massachusetts and the District of Massachusetts, including but not limited to: the services provided in connection with the construction project from which this action arises; offering, selling, and advertising products and services in the United States, the Commonwealth of Massachusetts, and the District of Massachusetts; engaging in wrongful conduct with foreseeable injurious effects within the Commonwealth of Massachusetts and the District of Massachusetts; and otherwise voluntarily submitting to the jurisdiction of Massachusetts courts.

### IV. FACTUAL BACKGROUND

16.     CEA is the owner and landlord of the North Shore Commons Shopping Center (the "Property").  The Property is located at 150 Brimbal Avenue, Beverly, Massachusetts 01915.

17.     In or around January 2013, Whole Foods entered a Lease with CEA, whereby the parties agreed to assume separate responsibilities and scopes of work to jointly develop a Whole Foods store located on the Property (the "Store" or the "Project").

4

18.     Under the Lease, CEA was solely responsible for constructing and designing the Building Shell, which encompassed all of the structural elements of the building.  CEA's responsibilities included prepping the site location with regard to the fill and pad location in conformance with appropriate geotechnical engineering recommendations and the building columns.

19.     Whole Foods was responsible for constructing and designing the improvements within the building shell.

20.     The Lease further obligated CEA to provide Whole Foods with a geotechnical report setting forth the water conditions, bearing capacity, and compatibility of the soil below the Property, as well as a certification confirming that the soil conditions beneath the Building Shell could support CEA's foundation design.  The geotechnical report was required to include design recommendations for preparing the site pad and building the foundation systems and for the concrete slab building floor.

21.     Between 2013 and 2018, CEA retained and contracted with various contractors, engineers, and architects, including H&A and CM&B, which in turn retained additional subcontractors, tradespeople, and engineering and construction workers, unknown at this time (collectively, the "Subcontractors"), as the subcontractors to conduct engineering studies, and then design, plan, and construct the substructure, site pad, and structural elements of the Store.

22.     The Subcontractors hold themselves out to the construction industry and the public at large as being qualified within the relevant professional and community standards and who represented themselves as properly trained providers of superior, quality, and durable construction, including in the engineering, designing, planning, and/or construction of foundation that is the subject of this litigation.

5

23.     Upon information and belief, the Subcontractors agreed and became bound to perform their work on the Store in a good and workmanlike manner, to agreed specifications, and in compliance with all applicable standards of care, including industry, manufacturer, and community, and all local, state, and federal code requirements.

24.     At all relevant times, and on information and belief, the Subcontractors understood and were made fully aware that Whole Foods was the direct beneficiary of the Subcontractors' agreements with CEA and the Subcontractors' work on the Property.   Specifically, the Subcontractors communicated with Whole Foods regarding key developments in and the timeline of the Store's construction.

25.     In addition, the Subcontractors understood that Whole Foods would be constructing the improvements to the building at significant expense after completion of the Subcontractors' work, and Whole Foods communicated directly with the Subcontractors about its construction of these elements of the Store.

26.     Construction began in or around late 2017 or early 2018 and was completed in or around October 2019.

27.     The Certificate of Occupancy was issued on October 15, 2019, and the Store was opened to customers on October 17, 2019.

28.     As constructed by CEA and the Subcontractors, the foundation and area below the floor slab consisted of a five-inch-thick concrete slab, aggregate base material, compacted structural fill, an LLPDE liner, crushed stone, a layer of landfill waste (the "Rubbish Fill"), and glacial soil/bedrock.

29.     In mid to late 2022, Whole Foods became aware of numerous structural and foundational issues with the Store, such as noticeable floor and ceiling movement in multiple areas

of the Store.  Several areas of the Store also appeared to be noticeably sinking into the ground. Over the subsequent years, Whole Foods has observed cracks in the Store's walls and floor slab; bulges and distress in interior walls; gaps between abutting walls; gaps between a wall and the ceiling; and multiple areas in which the floor was not level.  Whole Foods has learned recently that these events are all indicators of faulty workmanship performed by the Subcontractors as hired and monitored by CEA.

30.     The foundation issues eventually became so pronounced in the Store's vestibule that Whole Foods has had to pay to replace storefront glass windows that it bought and installed with acrylic windows to allow for movement and to prevent glass from shattering.  Whole Foods is also now experiencing issues with its doors caused by the shifting foundation.

31.     On information and belief, and after reasonable investigation, the differential movements of the floor slab are the result of long-term, minor, incremental, progressive, and typical differential settlement of the Rubbish Fill that CEA and the Subcontractors used to support the floor slab, which was caused by the decomposition of various materials in the Rubbish Fill below the Store.

32.     The decomposition of the materials in the Rubbish Fill will continue for the foreseeable future and that, unless the floor slab is repaired, the floor will continue to move differentially.

33.     None of the Defendants foresaw an issue arising out of the decomposition of the materials in the Rubbish Fill.   Engineers, architects, general contractors, and relevant subcontractors and tradespeople exercising reasonable due diligence and applying the appropriate standard of care would have foreseen the continuing decomposition of the materials in the Rubbish Fill and would have designed a substructure, foundation, and site pad that would have withstood

1616773318.1

and continuing decomposition of materials.    CEA, H&A, CM&B and the Doe Defendants operate regularly, if not on a daily basis, in the Beverly, Massachusetts area.  A reasonable prudent land lord, general contractor, subcontractor, engineer or tradesperson from the area knew or should have known of the history of the property and should have taken appropriate action to ensure that proper engineering, design, and construction occurred in light of the Rubbish Fill.

34.    The defects at the location are due to fundamental design, engineering, and construction errors, which were within Defendants' control and expertise.

35.    In fact, as H & A concluded in a memorandum issued in January 2024, that the cause of the foundation settlement was either: (a) improper design assumptions related to the stiffness of the soil, spacing of the construction elements, and settlement of the landfill; (b) improper excavation, backfilling material, and/or compaction of the soil during utility installation; or (c) a combination of both.

36.    Also on information and belief, it appears that there were no design recommendations in the geotechnical report for the slab-on-grade building floor, as required under the Lease.  Further, Defendants' mitigation plans currently being proposed will actually exacerbate the conditions because the weight of the grout proposed by Defendants' consultant will increase the weight of surcharge on the Rubbish Fill, thus potentially increasing the rate and magnitude of differential settlement as the Rubbish Fill continues to decompose. It could also be problematic for buried utilities.  Defendants continue to demonstrate a lack of expertise and negligent decision making.

37.    A comprehensive solution of removing and replacing the Rubbish Fill with structural fill will be expensive and well in excess of the jurisdictional limits of the Court.  These repairs are necessary, and likely the only method to address the negligent engineering, design and

construction at the site.  But these repairs will take time and it may be necessary to close the Store for a prolonged period of time to make the essential repairs.  Whole Foods will suffer damages as a direct and proximate result of Defendants' actions and omissions that have caused the need for the repair work and possible loss of revenue while the repair work occurs.

38.     Defendants failed to properly design and construct the foundation.  The Subcontractors also performed contrary to the standard of care in their respective professions and negligently in various respects, including in: evaluating the Property's soil conditions, construction spacing, and the Rubbish Fill's propensity for settlement; failing to properly excavate and compact the soil; and ultimately failing to design and construct a structurally sound foundation.

39.     Defendants' nonconforming and substandard work relating to the Store's foundation has left multiple areas of the Store to continuously sink deeper into the ground and has caused extensive property damage, such as glass windows spontaneously breaking, damage to doors, the separation of abutting walls, the separation of walls from the ceiling, and a significant number of visible cracks in the floor and walls, as well as damage in the parking lot and common areas.

40.     Overall, the design, planning, and construction of the foundation exhibited construction quality well below industry standards and of particularly poor quality considering the cost of the Project, of which CEA and the Subcontractors were aware.

41.     Whole Foods has incurred damages to date well in excess of the jurisdictional limitations of this court in out-of-pocket costs to repair the resulting damages .  By way of example, and without limitation, Whole Foods has incurred significant costs and expenses to comply with applicable codes, instructions, and standards.  Whole Foods has also incurred significant costs and expenses to remediate the deficient and defective foundation, including by paying for and seeking

1616773318.1

an expert opinion on the steps needed to return the Store to a safe and functional condition, repair work to correct issues to doors caused by the shifting foundation, and by removing expensive glass windows that were replaced by acrylic window treatments.  To date, Defendants have not compensated Whole Foods for the time, expense, or other damages caused by the structural and foundational issues for which Defendants alone are at fault.

42.     Whole Foods will likely incur millions of dollars in out-of-pocket costs not only to correct and remediate the substandard and negligent work completed by the Subcontractors and under CEA's supervision to applicable standards, but also in lost profits.  Whole Foods may be required to close the Store, which will result in a loss of approximately $1 million in profits per week, for a prolonged period of time in which repairs and remediation work takes place.  Whole Foods may also be required to cease performance under various pending vendor agreements. Whole Foods may also suffer reputational harm and loss of goodwill of the Store's customers and vendors, who will be required to take their business elsewhere.

43.     The negligent and defective work that has caused and will continue to cause losses to Whole Foods is the result of Defendants' poor workmanship, and does not result from any negligence, contractual breaches, or any other nonfeasance by Whole Foods.

44.     Due to the extensive losses that Whole Foods has incurred and will incur in order to repair the damage resulting from Defendants' defective work, the Defendants are liable for these losses, damages, and expenses.

## V.  CAUSES OF ACTION

### COUNT ONE – BREACH OF CONTRACT
### (Against CEA, H&A, CM&B, and Doe Defendants 1-25)

45.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

1616773318.1

46.    Whole Foods and CEA entered into a valid and enforceable contract, under which CEA agreed to become solely responsible for constructing and designing all the structural elements of the Store, including the foundation, the roof, the building structure, the building columns, and the building pad.  Whole Foods performed, tendered performance of, or was excused from performing all of its contractual obligations.  By its wrongful conduct described above, CEA materially breached the terms of its agreement with Whole Foods.  As a direct and proximate result, Whole Foods has suffered and/or incurred, and is entitled to recover, actual damages, benefit of the bargain damages, out of pocket costs, reasonable and necessary attorneys' fees, pre- and post-judgment interest, and court costs.

47.    On information and belief, based on the contract language, course of dealing, and surrounding circumstances, the Subcontractors knew that Whole Foods was a direct, intended third-party beneficiary of the agreements between CEA and the Subcontractors as well as any and all agreements that the Subcontractors had with one another. Whole Foods relied upon the Subcontractors' representations and the parties' bargained-for exchange that the work that was being performed was not being negligently designed or performed. Indeed, Whole Foods relied on the Subcontractors to perform in accordance with the terms of the contracts and with industry standards to deliver a completed structure free from any faulty design, engineering, or construction. Whole Foods received direct assurances from the Subcontractors, as per the representations and warranties in their contracts with Whole Foods directly and/or through the contractors hired by and working for CEA, H&A, or CM&B, that the foundation would be free from defect and suitable for the planned construction of the Store. Pursuant to the above-stated conduct, the Subcontractors materially breached the terms of the agreements with CEA, as well as with one another, and are liable for the damages that the Subcontractors ultimately caused

Whole Foods to incur, including actual and consequential damages, benefit of the bargain

damages, out of pocket costs, reasonable and necessary attorney's fees, pre- and post-judgment

interest, and court costs.

### COUNT TWO – BREACH OF EXPRESS AND IMPLIED WARRANTY
#### (Against CEA, H&A, CM&B, and Doe Defendants 1-25)

48.     Whole Foods repeats and incorporates by reference each of the preceding

paragraphs as if fully restated herein.

49.     By its wrongful and unauthorized conduct described above, each Defendant

breached its respective implied warranty to perform its work on the Store in a workmanlike

manner, to use reasonable and appropriate care and skill, and that the construction of the Store's

foundation would be free from substantial defects in materials or workmanship.

50.     In addition, by its improper and unauthorized conduct described above, CEA

breached its express warranties, including the warranty to perform its work in strict accordance

with the Building Code.

51.     In addition, upon information and belief, by the wrongful and unauthorized conduct

described above, H&A, CM&B, and each Doe Defendant breached the express warranties in their

respective contracts, including the warranty to perform its work in a good and workmanlike

manner, free from defects in workmanship and materials, and in strict accordance with (i) the plans

and specifications, (ii) any applicable manufacturer's specifications, recommendations or

requirements, and (iii) all applicable industry standards, codes, or other rules or regulations

applicable to the performance of the work.

52.     As a direct and proximate result, Whole Foods has suffered and/or has incurred,

and is entitled to recover, actual and economic damages, benefit of the bargain damages, out of

pocket costs, reasonable and necessary attorneys' fees, pre- and post-judgment interest, and court costs.

## COUNT THREE – NEGLIGENCE
### (Against H&A, CM&B, and Doe Defendants 1-25)

53.    Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

54.    H & A and CM&B owed a duty of care to Whole Foods to meet the standards of care applicable to reasonably prudent members of the construction and engineering professions and to commercial building construction in the United States.

55.    H & A and CM&B represented themselves to Whole Foods as experts in the field of designing, planning, and constructing the Store and other commercial construction projects.

56.    H & A and CM&B's conduct as alleged herein constitutes an extreme departure from the ordinary standard of care.

57.    Whole Foods was a direct third-party beneficiary to most, or all, of the agreements between the respective Subcontractors, including those contracts between the Doe Defendants and CM&B, as well as those between the Doe Defendants and H&A. And, the Doe Defendants' negligent acts/omissions describe above, which occurred in the course of their performing under these contracts between the Subcontractors, caused Whole Foods to suffer damages. Therefore, the Doe Defendants are also liable to Whole Foods for their own negligent acts/omissions.

58.    By their wrongful and unauthorized conduct described above, H & A, CM&B, and the Doe Defendants breached their respective duty to Whole Foods, proximately causing Whole Foods' injuries described herein. As a direct and proximate result, Whole Foods has suffered and/or has incurred, and is entitled to recover, actual and economic damages, out of pocket costs, pre- and post-judgment interest, and court costs.

## COUNT FOUR – NEGLIGENT SUPERVSION
### (Against CEA)

59.    Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

60.    CEA knew by the terms of the lease that it needed to contract with appropriate service providers to provide engineering services, design services, architectural services and construction services at the location.    CEA failed to adequately supervise, direct, or control the people with whom it contracted, and who were therefore its agents and within its employ, to ensure that they were properly trained and monitored, to ensure that the location was properly surveyed, to ensure that appropriate plans were designed, and to ensure that construction was performed reasonably and in accordance with local community and professional standards.

61.    CEA knew of the conditions at the site, and knew or should have known based on its presence and actions in the community that the site was built on a Rubbish Fill. A reasonably prudent landlord would have made certain that all designs and construction accounted for the decomposition of the Rubbish Fill.   Despite this knowledge, and despite that fact that a reasonably prudent landlord building a site plan and constructing a site plan for a large retail customer would take care to ensure that all surveys, engineering reports, architectural plans and any ultimate work at the site accounted for the geological conditions at issue, CEA failed to supervise its agents, employees, and others with whom it had contracted and instead allowed for the construction of a site pad that was negligently engineered, designed, and constructed by the Doe Defendants.

62.    As a direct and proximate result of CEA's conduct described above, including both its actions and omissions with regard to supervising its agents, employees, H&A, CM&B, and the Subcontractors, including the Doe Defendants, Whole Foods has suffered damages in an amount to be proven at trial.

## COUNT FIVE – NEGLIGENT SUPERVISION
### (Against H&A)

63.    Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

64.    H&A knew by the terms of its contract and the nature of the project that it needed to contract with appropriate service providers to provide engineering services, design services, architectural services and construction services at the location.   H&A failed to adequately supervise, direct, or control the people with whom it contracted, who were therefore its agents and within its employ, to ensure that they were properly trained and monitored, to ensure that the location was properly surveyed, to ensure that appropriate plans were designed, and to ensure that construction was performed reasonably and in accordance with local community and professional standards.

65.    H&A knew of the conditions at the site, and knew or should have known based on its presence and actions in the community that the site was built on a Rubbish Fill.  A reasonably prudent engineering and design firm would have made certain that all designs and construction accounted for the decomposition of the Rubbish Fill.   Despite this knowledge, and despite that fact that a reasonably prudent engineering and design firm involved in building a site plan and assisting with constructing a site plan for a large retail customer would take care to ensure that all surveys, engineering reports, architectural plans and any ultimate work at the site accounted for the geological conditions at issue, H&A failed to supervise its agents, employees, and others with whom it had contracted and instead allowed for the construction of a site pad that was negligently engineered, designed, and constructed by CM&B and the Doe Defendants.

66.    As a direct and proximate result of H&A's conduct described above, including both its actions and omissions with regard to supervising its agents, employees, CM&B, and the

Subcontractors, including the Doe Defendants, Whole Foods has suffered damages in an amount to be proven at trial.

## COUNT SIX – NEGLIGENT SUPERVISION
### (Against CM&B)

67.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

68.     CM&B knew by the terms of its contract with CEA and the conditions of the site and intended use of the site by Whole Foods that it needed to contract with appropriate service providers to provide engineering services, design services, architectural services and construction services at the location.   CM&B failed to adequately supervise, direct, or control the people with whom it contracted, and who were therefore its agents and within its employ, to ensure that they were properly trained, to ensure that the location was properly surveyed, to ensure that appropriate plans were designed, and to ensure that construction was performed reasonably and in accordance with local community and professional standards.

69.     CM&B knew of the conditions at the site, and knew or should have known based on its presence and actions in the community that the site was built on a Rubbish Fill. A reasonably prudent general contractor would have made certain that all designs and construction accounted for the decomposition of the Rubbish Fill.   Despite this knowledge, and despite that fact that a reasonably prudent general contractor building a site plan and constructing a site plan for a large retail customer would take care to ensure that all surveys, engineering reports, architectural plans and any ultimate work at the site accounted for the geological conditions at issue, CM&B failed to supervise its agents, employees, and others with whom it had contracted and instead allowed for the construction of a site pad that was negligently engineered, designed, and constructed by the Doe Defendants.

1616773318.1

70.     As a direct and proximate result of CM&B's conduct described above, including both its actions and omissions with regard to supervising its agents, employees, and the Subcontractors, including the Doe Defendants, Whole Foods has suffered damages in an amount to be proven at trial.

## COUNT SEVEN – NEGLIGENT INTERFERENCE WITH
## PROSPECTIVE BUSINESS RELATIONS
### (Against all Defendants)

71.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

72.     At all times mentioned herein, an economic relationship existed between Whole Foods and its actual and prospective customers and vendors.

73.     As a result of the existence of these relationships between Whole Foods and its actual and prospective customers and vendors, there existed a reasonable probability of future economic benefit to Whole Foods.

74.     Defendants were aware of Whole Foods' existing business relationships as described herein, and further knew of the probability of future economic benefit to Whole Foods arising from these relationships.

75.     Defendants knew or should have known that the conduct described above, including but not limited to building a structurally unsound foundation, would harm the prospective economic relationships described above, but nevertheless Defendants negligently engaged in said conduct, interfering with and harming Whole Foods' business reputation and relationships.

76.     As a direct and proximate result of Defendants' conduct described above, Whole Foods has suffered damages in an amount to be proven at trial.

1616773318.1

## COUNT EIGHT – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Against H&A for certain Doe Defendants' conduct)

77.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

78.     During the period at issue, certain Doe Defendants were acting as H&A's agent(s), pursuant to an employment agreement between the two entities.

79.     The Doe Defendants performed all or part of the engineering, site planning, and construction at issue in this case for H&A's benefit, in exchange for consideration.

80.     While acting in the scope of the agreed-upon agency relationship with H&A, i.e., while employed by H&A to perform the engineering, site planning, and construction tasks, the Doe Defendants failed to exercise due care and ultimately acted negligently for the reasons previously stated.

81.     As a direct and proximate result of the Doe Defendants' negligent conduct described above, Whole foods has suffered damages in an amount to be proven at trial.

82.     Consequently, since the Doe Defendants were working for H&A's benefit and within the scope of its employment with H&A when the negligent act/s occurred, H&A is vicariously liable for the Doe Defendants conduct under the doctrine of Respondent Superior because the Doe Defendants were H&A's agent at the time of the acts/omissions at issue.

## COUNT NINE – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Against CM&B for certain Doe Defendants' Conduct)

83.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

84.     During the period at issue, certain Doe Defendants were acting as CM&B's agent(s), pursuant to an employment agreement between the two entities.

1616773318.1

85. The Doe Defendants performed all or part of the engineering, site planning, and construction at issue in this case for CM&B's benefit, in exchange for consideration.

86. While acting in the scope of the agreed-upon agency relationship with CM&B, i.e., while employed by CM&B to perform the engineering, site planning, and construction, the Doe Defendants failed to exercise due care and ultimately acted negligently for the reasons previously stated.

87. As a direct and proximate result of the Doe Defendants' negligent conduct described above, Whole foods has suffered damages in an amount to be proven at trial.

88. Consequently, since the Doe Defendants were working for CM&B's benefit and within the scope of its employment with CM&B when the negligent act/s occurred, CM&B is vicariously liable for the Doe Defendants conduct under the doctrine of Respondent Superior because the Doe Defendants were CM&B's agent at the time of the acts/omissions at issue.

### COUNT TEN – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
#### (Against CEA for H&A's Conduct)

89. Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

90. During the period at issue, H&A was acting as CEA's agent, pursuant to an employment agreement between the two entities.

91. H&A performed all or part of the engineering, site planning, and construction at issue in this case for CEA's benefit, in exchange for consideration.

92. While acting in the scope of the agreed-upon agency relationship with CEA, i.e., while employed by CEA to perform the engineering, site planning, and construction, H&A failed to exercise due care and ultimately acted negligently for the reasons previously stated.

1616773318.1

93.     As a direct and proximate result of the H&A's negligent conduct described above, Whole foods has suffered damages in an amount to be proven at trial.

94.     Consequently, since H&A was working for CEA's benefit and within the scope of its employment with CEA when the negligent act/s occurred, CEA is vicariously liable for H&A's conduct under the doctrine of Respondent Superior because H&A was CEA's agent at the time of the acts/omissions at issue.

### COUNT ELEVEN – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Against CEA for CB&M's Conduct)

95.     Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

96.     During the period at issue, CB&M was acting as CEA's agent, pursuant to an employment agreement between the two entities.

97.     CB&M performed all or part of the engineering, site planning, and construction at issue in this case for CEA's benefit, in exchange for consideration.

98.     While acting in the scope of the agreed-upon agency relationship with CEA, i.e., while employed by CEA to perform the engineering, site planning, and construction, CB&M failed to exercise due care and ultimately acted negligently for the reasons previously stated.

99.     As a direct and proximate result of the CB&M's negligent conduct described above, Whole foods has suffered damages in an amount to be proven at trial.

100.    Consequently, since CB&M was working for CEA's benefit and within the scope of its employment with CEA when the negligent act/s occurred, CEA is vicariously liable for CB&M's conduct under the doctrine of Respondent Superior because CB&M was CEA's agent at the time of the acts/omissions at issue.

### COUNT TWELVE – RESPONDEAT SUPERIOR/VICARIOUS LIABILITY
### (Against CEA for the Doe Defendants' Conduct)

101.    Whole Foods repeats and incorporates by reference each of the preceding paragraphs as if fully restated herein.

102.    During the period at issue, the Doe Defendants were acting as the subagent(s) of CEA, hired by H&A and CB&M to perform work on behalf of CEA.

103.    The Doe Defendants performed all or part of the engineering, site planning, and construction at issue in this case for CEA's ultimate benefit, in exchange for consideration. They also did so for the benefit of H&A and CB&M, which were acting as agents of CEA at the time and were similarly working for CEA's benefit.

104.    While acting in the scope of the agreed-upon subagency relationship with CEA, i.e., while employed by H&A and CB&M to perform the engineering, site planning, and construction for the benefit of CEA, the Doe Defendants failed to exercise due care and ultimately acted negligently for the reasons previously stated.

105.    As a direct and proximate result of the Doe Defendants' negligent conduct described above, Whole foods has suffered damages in an amount to be proven at trial.

106.    Consequently, since the Doe Defendants were working for CEA's, H&A's, and CB&M's benefit(s) and within the scope of their employment with H&A and CB&M when the negligent act/s occurred, and since H&A and CB&M were themselves working for CEA's benefit and within the scope of their employment with CEA when the negligent act/s occurred, CEA is vicariously liable for the Doe Defendants' conduct under the doctrine of Respondeat Superior because the Doe Defendants were CEA's subagent(s) at the time of the acts/omissions at issue.

## VI. CONDITIONS PRECEDENT

107.    All conditions precedent to recovery sought herein have been met or have been waived by Defendants.

## VII. PRAYER FOR RELIEF

Whole Foods requests judgment and award against Defendants, jointly and severally, for the following:

(a)    Actual, economic, consequential, and benefit of the bargain damages;

(b)    Out of pocket costs, expenses, and reliance damages;

(c)    Pre- and post-judgment interest at the highest rate allowed by law;

(d)    Costs of court;

(e)    Reasonable and necessary attorneys' fees; and

(f)    All other relief at law or in equity to which Whole Foods may show itself entitled to at law or in equity.

Respectfully submitted,

WHOLE FOODS MARKET GROUP, INC.

Paul B. Lewis (BBO No. 690793)
Jason M. Strojny (BBO No. 707774)
DLA Piper (US)
33 Arch Street
Boston, MA 02110
(617) 406-6000
Paul.Lewis@us.dlapiper.com
Jason.Strojny@us.dlapiper.com

Gregory J. Casas
(Pro Hac Vice forthcoming)
Texas State Bar No. 00787213
DLA Piper (US)
303 Colorado Street, Suite 3000
Austin, Texas 78701
512-457-7290
512-721-2390 – Fax
Greg.casas@us.dlapiper.com

John H. Hempfling, II
(Pro Hac Vice forthcoming)
Texas State Bar No. 24029609
Vice President, Associate General Counsel
Whole Foods Market, Central Office
828 W 6th Street, Suite 200
Austin, Texas 78703
(512) 542-0213
John.Hempfling@wholefoods.com

Date: January 30, 2025