UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WHOLE FOODS MARKET GROUP, INC.,   *
                                     *

      Plaintiff,                    *
                                     *

         v.                        *
                                     *

CEA BEVERLY, LLC, HALEY &amp;       *
ALDRICH, INC., CONSTRUCTION     *
MANAGEMENT &amp; BUILDERS, INC.,    *
HELLICAL DRILLING, INC., GEOPIER  *     Civil Action No. 1:25-cv-10233-IT
FOUNDATION COMPANY, INC.,      *
SEPPALA CONSTRUCTION COMPANY, *
INC., CARLCO CONSTRUCTION INC.,  *
JACOBS ENGINEERING GROUP, INC.,  *
and DOE DEFENDANTS NOS. 1–25,    *
                                     *

      Defendants.                  *
                                     *

MEMORANDUM & ORDER

March 19, 2026

TALWANI, D.J.

Pending before the court is Defendant Jacobs Engineering Group, Inc.'s ("JEG") Motion
to Dismiss Plaintiff's Complaint [Doc. No. 69] pursuant to Federal Rule of Civil Procedure
12(b)(6). For the reasons set forth below, JEG's Motion [Doc. No. 69] is DENIED.

## I.      Background

The facts of this case as alleged in the Second Amended Complaint [Doc. No. 52] are as
follows.

In or around January 2013, Plaintiff Whole Foods Market Group, Inc. ("Whole Foods")
entered into a lease agreement (the "Lease") with Defendant CEA Beverly, LLC ("CEA") to
jointly develop a Whole Foods store (the "Store") on CEA's property, the North Shore
Commons Shopping Center on Brimbal Avenue in Beverly, Massachusetts (the "Property"). See

Second Am. Compl. ¶¶ 13–14, 23 [Doc. No. 52]. Between 2013 and 2018, CEA "and/or" Whole Foods entered into agreements with various contractors, engineers, and architects to construct the Store's building elements. See id. ¶ 8. In turn, these entities brought on "additional subcontractors, tradespeople, and engineering and construction workers," including JEG. Id. ¶¶ 15, 27, 40.

Under the Lease, "CEA was solely responsible for constructing and designing the subfloor, pad site and the Building Shell, which encompassed all of the structural elements of the building." Id. ¶ 24. CEA's "responsibilities included prepping the site location with regard to the fill and pad location, including a ground improvement system, in conformance with appropriate geotechnical engineering recommendations and the building columns." Id. As to the "geotechnical engineering recommendations[,]" the Lease obligated CEA to provide Whole Foods with a geotechnical report

> setting forth the water conditions, bearing capacity, and compatibility of the soil below the Property, as well as a certification confirming that the soil conditions beneath the Building Shell could support CEA's foundation design. The geotechnical report was required to include a ground improvement system and design recommendations for preparing the site pad and building the foundation systems and for the concrete slab building floor.

Id. ¶ 26. Whole Foods, as per the Lease, was "responsible for constructing and designing the improvements within the Building Shell." Id. ¶ 25.[1]

Either CEA or another contractor, but not Whole Foods, contracted with JEG and several other Defendants "specifically to help design, engineer, and construct or install a stable pad used to support a floor slab at the location." Id. ¶¶ 15, 40; see id. ¶ 24 (per the Lease, subfloor and pad

---

[1] Whole Foods, rather than CEA, contracted directly with Defendant Construction Management & Builders, Inc. ("CM&B") in 2019 for the design and construction of the Store's "foundation, . . . slab and slab base prep work, [and] utility trenching and backfilling[.]" Id. ¶¶ 23, 28.

site were responsibilities of CEA); see also Am. Opp'n 5 [Doc. No. 78] ("Of the Contractors and Subcontractors, only CEA and CM&B directly contracted with Whole Foods; JEG did not."). "JEG was listed as the architect on a permit to build at the Location in March 2019 to perform 'the interior fitup of [the Store] including framing, sheetrock, electrical, plumbing, ductwork, new refrigerated cases and wall finishes[,]'" Second Am. Compl. ¶ 4 [Doc. No. 52], and was retained as a subcontractor "responsible for the preparation of certain design plans, computations, and specifications concerning the architectural development" of the Store, id.

The stable pad on which JEG worked supported the Store's five-inch-thick concrete floor slab, a component of the Store's foundation. See id. ¶¶ 35, 40. In addition to the floor slab, the foundation consisted of "aggregate base material, compacted structural fill, a [linear low-density polyethylene] liner, crushed stone, a layer of landfill waste (the 'Rubbish Fill'), and glacial soil/bedrock." Id. ¶ 35.

Construction on the Store began in or around late 2017 or early 2018 and concluded in or around October 2019. Id. ¶ 33. Whole Foods opened the Store to customers on October 17, 2019. Id. ¶ 34.

In 2022, Whole Foods "became aware of numerous structural and foundational issues with the Store," including "noticeable" movement of the floor and ceiling. Id. ¶ 36. "Several areas of the store also appeared to be noticeably sinking into the ground." Id. Since then, Whole Foods has observed other problems with the Store, including cracks in the walls and floor slab, distress and bulging in interior walls, gaps between walls and between a wall and the ceiling, unlevel areas of the floor, and damage to the Store's parking lot and common areas. See id. ¶¶ 36, 46. Whole Foods has replaced the Store's front glass windows with acrylic windows to

3

"allow for movement and to prevent glass from shattering[,]" and the Store's doors are now "experiencing issues." Id. ¶ 37.

Whole Foods attributes these defects to movements in the floor slab caused by "long-term, minor, incremental, progressive, and typical differential settlement of the Rubbish Fill beneath the site pad and the floor slab." Id. ¶ 38. The decomposition and the associated floor movement "will continue for the foreseeable future" absent repair or replacement of the Store's subfloor, ground improvement system, and floor slab. Id. ¶ 39. To date, Whole Foods has incurred substantial out-of-pocket repair costs and anticipates "millions of dollars" in future remedial costs, including profit loss of approximately $1 million per week during the period in which the Store may have to close to customers to facilitate the repair work. Id. ¶¶ 48–49.

## II.    Procedural History

Whole Foods commenced this action, based on diversity jurisdiction, in January 2025, see Compl. [Doc. No. 1], and filed the operational Second Amended Complaint [Doc. No. 52] on May 22, 2025. As to JEG, the Second Amended Complaint [Doc. No. 52] alleges breach of contract (Count 1); breach of express and implied warranty (Count 2); negligence (Count 3); negligent supervision (Count 11); and negligent interference with prospective business relations (Count 12). See id. ¶¶ 52–66, 95–103.

JEG filed a Motion to Dismiss Plaintiff's Complaint [Doc. No. 69] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Whole Foods's Amended Opposition [Doc. No. 78] followed.

## III.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain

4

sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original). If other matters outside the pleadings are presented to the court, the court may exclude such matters or may treat the motion as one for summary judgment, with all parties given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

### IV.    Discussion

JEG asserts that (1) Plaintiff "failed to state a claim for breach of contract"; (2) "there was no privity of contract between [JEG] and the Plaintiff"; and (3) Plaintiff "failed to plausibly allege that JEG owed a duty to the Plaintiff."  Mem. ISO Mot. to Dismiss 4–8 [Doc. No. 70].

### A.  *Breach of Contract*

"To prevail on a claim for breach of contract" under Massachusetts law, a plaintiff must first "demonstrate that there was an agreement between the parties; the agreement was supported by consideration; [and] the plaintiff was ready, willing, and able to perform his or her part of the contract." Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 581, 227 N.E.3d 999, 1013 (2024) (quotation omitted). At the motion to dismiss stage, "a plaintiff must furnish enough

5

detail about the obligations of the alleged contracts to allow a reasoned determination as to whether the . . . breach of contract []is alleged." Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 538 (1st Cir. 2023) (citing Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co., 358 Mass. 822, 822, 267 N.E.2d 918–19 (1971)).

JEG asserts that Whole Foods has failed to allege the existence of a valid contract between JEG and Whole Foods or the nature of any such contract with specificity. See Mem. ISO Mot. to Dismiss 4–6, 8 [Doc. No. 70]. Whole Foods argues that, where JEG is "in possession and control" of the underlying contract, it has sufficiently pleaded a contractual agreement as far as practicable. Am. Opp'n 10 [Doc. No. 78]; see id. at 8. As to JEG's contention that the pleadings are too meager to establish privity of contract between JEG and Whole Foods, Whole Foods maintains that its pleadings are sufficient under "an intended third-party beneficiary theory." Id. at 7.

        1.        The Existence and Nature of the Purported Contract

As a threshold issue, JEG challenges Whole Foods's premise that a contract existed between JEG "and either [Whole Foods] or CEA[.]" Mem. ISO Mot. to Dismiss 6 [Doc. No. 70]. As grounds therefor, JEG focuses on purported deficiencies in the Second Amended Complaint [Doc. No. 52], including that the "[c]omplaint lacks any of the terms of the contract including even the parties to the contract[,] let alone the duration of the contract, or the obligations imposed on each parties" and "does not plead that plaintiff performed its obligations under the contract." Mem. ISO Mot. to Dismiss 6 [Doc. No. 70].

Under the plausibility standard set forth in Twombly, a plaintiff is not prevented from "pleading facts alleged 'upon information and belief' (1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible." Primerica Life Ins. Co. v. Bailey, No. 20-cv-

6

10743-ADB, 2021 WL 927462, at *3 (D. Mass. Mar. 11, 2021) (quoting Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018)); Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). Although "information and belief" must be more than speculation, "some latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where . . . some of the information needed may be in control of the defendants." Menard v. CSX Transp., Inc.. 698 F.3d 40, 45 (1st Cir. 2012) (quotations omitted) (cleaned up).

In its Second Amended Complaint [Doc. No. 52], Whole Foods alleges that it contracted with CEA to jointly develop the Store in 2013 and with CM&B in 2019 for the design and construction of the Store's "foundation, . . . slab and slab base prep work, [and] utility trenching and backfilling[.]" Id. ¶¶ 23, 28. Whole Foods does not allege that it contracted directly with JEG, but it lists JEG as one of the "[c]ontractors and [s]ubcontractors" that CEA, Whole Foods, or both entities "retained and contracted with" to construct the Store and its various building elements. Id. ¶ 27. Although such assertions do not reflect the specific terms of any contract under which JEG was bound, Whole Foods has offered sufficient factual allegations from which the court reasonably infers that JEG performed work on the construction of the Store and did so pursuant to an agreement with another party.

Central to this inference is Whole Foods's factual assertion that JEG "was listed as the architect on a permit to build at the Location in March 2019, to perform 'the interior fitup of a Whole Foods Grocery Store including framing, sheetrock, electrical, plumbing, ductwork, new refrigerated cases and wall finishes.'" Id. ¶ 4. The permit referenced in the Second Amended Complaint [Doc. No. 52] certified that "CEA Beverly LLC" was permitted to "erect, alter, or demolish a building" at the Store's location on Brimbal Avenue and to perform the types of work

reported in the <u>Second Amended Complaint</u> [Doc. No. 52]. Aff. of Kevin M. Bergin, Ex. A [Doc. No. 77-1]. Where the permit called for the "Engineer Name[,]" "Jacobs Engineering Group [JEG]" was listed. <u>Id.</u> Thus, whether in an architectural or engineering capacity, JEG plausibly performed work related to the development and construction of the Store.

Given that the Store was ultimately completed and opened to the public in 2019, the court may also reasonably infer that the work for which JEG was allegedly responsible—namely, the construction and installation of a "stable pad used to support a floor slab [for the foundation] at the location," Second Am. Compl. ¶ 40 [Doc. No. 52]—was completed, if unsatisfactorily. Drawing all inferences in Whole Foods's favor, as the court must at this stage, Whole Foods' factual allegations raise a plausible inference that JEG would not have completed such work gratuitously but did so pursuant to an agreement under which JEG would receive payment. <u>See In re MOVEit Customer Data Sec. Breach. Litig.</u>, No. 23-md-3083-ADB-PGL, 2025 WL 2176590, at *13 (D. Mass. July 31, 2025) (inferring that company "entered into agreements with its customers, and that the purpose of those agreements was to provide software that could securely transfer files containing sensitive information" where plaintiffs sufficiently alleged "on information and belief" that the company was "responsible for maintaining secure code . . . on behalf of its customers" and the "very purpose" of the company's product was "to provide for secure data storage and transfer"); <u>accord</u> <u>Lexington Ins. Co.</u>, 347 F. Supp. 3d at 65 ("[T]he inference that Defendant would not have continued to perform on a contract that Plaintiffs had breached is certainly plausible, if not likely.").

Accordingly, where the facts relating to the purported contract are within JEG's possession and control, Whole Foods has sufficiently pleaded JEG's agreed-upon involvement in the design and construction of the Store. <u>See</u> <u>Menard</u>, 698 F.3d at 45; <u>Arista Records, LLC</u>, 604

F.3d at 120; <u>Primerica Life Ins. Co.</u>, 2021 WL 927462, at *3; <u>Lexington Ins. Co.</u>, 347 F. Supp. 3d at 64 n.1.

     2.     <u>Privity of Contract</u>

JEG also asserts that, to the extent the existence and terms of a contract to which JEG was a party is sufficiently pleaded, Whole Foods has failed to allege that it was a party to the contract with JEG or that there is privity of contract between the Plaintiff and JEG, including under a third-party beneficiary theory. Mem. ISO Mot. to Dismiss 8 [Doc. No. 70]. Whole Foods argues that its pleadings are sufficient where Whole Foods was the intended third-party beneficiary of any contract to which JEG was a party regarding the Store. <u>See</u> Am. Opp'n 7, 14 [Doc. No. 78].

The Massachusetts Supreme Judicial Court has "adopted the rules concerning third-party beneficiaries set forth in the Restatement (Second) of Contracts (1981)[.]" <u>Licata v. GGNSC Malden Dexter LLC</u>, 466 Mass. 793, 803, 2 N.E.3d 840, 848 (2014). In relevant part, these rules provide:

> [U]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

<u>Rae v. Air-Speed, Inc.</u>, 386 Mass. 187, 194, 435 N.E.2d 628, 632 (1982) (quoting Restatement (Second) of Contracts § 302(1)).

"To prevail on a third-party beneficiary claim, a party must show that the two contracting parties intended to give the third party the benefit of the contract." <u>Hayes v. CRGE Foxborough, LLC</u>, 167 F. Supp. 3d 229, 242 (D. Mass. 2016) (citing <u>Anderson v. Fox Hill Vill. Homeowners Corp.</u>, 424 Mass. 365, 366, 676 N.E.2d 821, 822 (1997)). In contrast, a party who "as a by-product of the contract benefits from its performance" is only an "incidental beneficiary" and

9

may not prevail on such claims. Brison v. Wellpath, LLC, 662 F. Supp. 3d 67, 76 (D. Mass. 2023) (citing Spinner v. Nutt, 417 Mass. 549, 556, 631 N.E.2d 542, 546 (1994)); see Pollak v. Fed. Ins. Co., No. 13-cv-12114-FDS, 2013 WL 6152335, at *2 (D. Mass. Nov. 21, 2013) ("[O]nly intended beneficiaries, not incidental beneficiaries, can enforce a contract." (quotation omitted)).

"Under Massachusetts law, a contract does not confer third-party beneficiary status unless the 'language and circumstances of the contract' show that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiary to benefit from the promised performance." Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 466, 918 N.E.2d 36, 44 (2009) (quoting Anderson, 424 Mass. at 366–67, 676 N.E.2d at 822); see Hayes, 167 F. Supp. 3d at 242. Although an intended party "need not be specifically or individually identified in the contract," the party "must fall within a class clearly intended by the parties to benefit from the contract." Mass. v. Mylan Laboratories, 357 F. Supp. 2d 314, 326 (D. Mass. 2005) (citing McCarthy v. Azure, 22 F.3d 351, 362 (1st Cir. 1994)).

Here, JEG posits that Whole Foods, as a non-signatory to JEG's purported contract, may not assert a breach of contract claim against JEG because it "has failed to allege that JEG had actual knowledge that Whole Foods was the intended beneficiary such that it need not stand in privity to bring its claims." Mem. ISO Mot. to Dismiss 9 [Doc. No. 70]. As support for its argument, JEG points the court to Orell v. UMass Memorial Med. Ctr., Inc., 203 F. Supp. 2d 52 (D. Mass. 2002).

In Orell, the plaintiff brought suit for, inter alia, breach of contract against a consulting firm hired by her employer and an employee of the consulting firm contracted to serve as interim director over the plaintiff's work department. See id. at 58–59. The court rejected plaintiff's

assertion that she was an intended beneficiary of her employer's contract with the consulting

firm, under which "consulting services [would] be provided by [the consulting firm]" to the

employer. Id. at 68. The court found that "[t]he alleged facts do not support a claim that the

purpose of the contract was to benefit [the plaintiff] or that she otherwise had a right to

performance of the agreement." Id.

Here, in contrast, the facts alleged in the Second Amended Complaint [Doc. No. 52]

support a plausible claim that the purpose of any contract to which JEG was subject was the

construction of the Store, which, of necessity, would benefit Whole Foods. See, e.g., id. ¶ 31

(asserting that "the Contractors and Subcontractors[,]" of which JEG was a part, "were made

fully aware that Whole Foods was the direct beneficiary of [their] agreements with CEA and . . .

work on the Property"); id. ("[T]he Contractors and Subcontractors communicated with Whole

Foods regarding key developments in and the timeline of the Store's construction."); id. ¶ 32

("Whole Foods communicated directly with the Contractors and Subcontractors about its

construction of [building improvements] of the Store."). As indicated supra, JEG was also listed

on a March 2019 building permit for the development of the Store. See id. ¶ 4; Bergin Aff., Ex.

A [Doc. No. 77-1]. There is therefore a reasonable basis on which to infer that JEG was both

contracted to perform work that would benefit Whole Foods via the construction of its new Store

and was aware of this reality. See Cumis Ins. Soc., Inc., 455 Mass. at 466, 918 N.E.2d at 44;

Mylan Laboratories, 357 F. Supp. 2d at 326. Accordingly, at this stage in the proceedings, Whole

Foods has sufficiently demonstrated that it may assert contract claims against JEG as an intended

third-party beneficiary.

B.  *Breach of Express and Implied Warranty*

JEG contends that Whole Foods's breach of implied and express warranty claim cannot

be sustained where that Whole Foods "seeks only recovery of economic loss[.]" Mem. ISO Mot.

to Dismiss 7 [Doc. No. 70]. JEG asserts that the claim thus "sounds in contract law" and, where JEG maintains that Whole Foods "has failed to sufficiently allege a contract claim," must be dismissed. Id.

A breach of warranty claim may sound in contract or in tort "depending on the existence of privity between the parties and the nature of the injury claimed." Softub, Inc. v. Mundial, Inc., 53 F. Supp. 3d 235, 260 (D. Mass. 2014) (citing Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 329–31, 649 N.E.2d 758, 762–63 (1995)) (additional citations omitted). "Economic losses" include "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits[.]" Berish v. Bornstein, 437 Mass. 252, 267, 770 N.E.2d 961, 975 (2002) (quotation omitted). JEG is correct that a claim for economic loss only sounds in contract. See Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107, 533 N.E.2d 1350, 1353 (1989). If Whole Foods' claim was for economic loss only, as JEG contends, the warranty claim would still survive where the court has found that Whole Foods has sufficiently alleged a contract claim.

And Whole Foods is not limited to a contract-based claim by the economic loss doctrine. Under that doctrine, "purely economic losses are unrecoverable in tort . . . in the absence of personal injury or property damage." FMR Corp. v. Boston Edison Co., 415 Mass. 393, 267, 613 N.E.2d 902, 903 (1993); see Bay State-Spray & Provincetown S.S., Inc., 404 Mass. at 107, 613 N.E.2d at 1353. "[W]here the negligent design or construction of a product leads to damage only to the product itself, the recovery for economic loss is in contract, and the economic loss rule bars recovery in tort." Wyman v. Ayer Properties, LLC, 469 Mass. 64, 69, 11 N.E.3d 1074, 1080 (2014).

12

In Massachusetts, the economic loss doctrine "applies not only to the purchase and sale of products but also to claims of negligent design and installation in a newly constructed home." Berish, 437 Mass. at 267, 770 N.E.2d at 975. But if, upon accepting plaintiff's allegations as true, "it is reasonable to infer that the enumerated 'defects and deficiencies' [in the new construction] caused property damage beyond the defects . . . themselves," the economic loss doctrine is not a bar to recovery. Id. at 268.

Although JEG asserts that Whole Foods seeks "only recovery for economic loss," see Mem. ISO Mot. to Dismiss 7 [Doc. No. 70], Whole Foods alleges property damage beyond the foundational defects themselves insofar as it alleges damages to other Store elements arising from the foundational defects, rather than damages that only reflect the costs necessary to repair the foundation. See, e.g., Second Am. Compl. ¶ 48 [Doc. No. 52] (referencing "significant costs and expenses" associated with, inter alia, "repair work to correct issues to doors caused by the shifting foundation" and "remov[al] of expensive glass windows that were replaced by acrylic window treatments"); see also Solfisburg v. Glenco, Inc., No. 18-cv-10266-IT, 2019 WL 4770951, at *3 n.1, 4 (D. Mass. Sept. 30, 2019) (recovery not barred for damages to home's interior caused by ice and snow seepage through defective roof); McDonough v. Whalen, 365 Mass. 506, 508, 513–14, 313 N.E.2d 435, 437, 440 (1974) (recovery from septic system designer and installer permitted for "loss of use of the property and the depreciation in its value" arising from "physical damage" caused by "sewage flowing over [plaintiffs'] land" from defective system). Accordingly, neither a contract-based nor a tort-based warranty claim is foreclosed.

C. *Negligence*[2]

Under Massachusetts Law, "a negligence claim requires a plaintiff to show duty, breach, causation, and damages." Trs. of Boston Univ. v. Clough, Harbour & Assocs. LLP, 495 Mass. 682, 687, 255 N.E.3d 596, 601 (2025). JEG asserts that "[w]here . . . [Whole Foods] has failed to state claim for breach of contract, [Whole Foods] has failed to plausibly allege that JEG owed any duty to [Whole Foods]." Mem. ISO Mot. to Dismiss 7–8 [Doc. No. 70].

As discussed supra, however, Whole Foods has alleged a plausible claim for breach of contract as to JEG. Accordingly, this argument fails.

## V.    Conclusion

For the foregoing reasons, JEG's Motion to Dismiss Plaintiff's Complaint [Doc. No. 69] is DENIED.

IT IS SO ORDERED.

March 19, 2026                             /s/ Indira Talwani
                                           United States District Judge

---

[2] JEG discusses only Count 3 as a negligence claim, see Mem. ISO Mot. to Dismiss 7–9 [Doc. No. 70], but the court treats this argument as also directed at Count 11, a claim of negligent supervision against JEG, and Count 12, a claim of negligent interference with prospective business relations against all Defendants, see Second Am. Compl. ¶¶ 95–103 [Doc. No. 52], where JEG seeks dismissal of "all counts." Mem. ISO Mot. to Dismiss 4 [Doc. No. 70].